UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DOMINIC BOUTELLE, as parent of
L.B., a minor child,

    Plaintiff/Counter-Defendant,

v.                                                                         Civ. No. 17-1232 GJF/SMV

BOARD OF EDUCATION OF LAS
CRUCES PUBLIC SCHOOLS,

    Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court[1] upon Plaintiff/Counter-Defendant Dominic Boutelle's ("Plaintiff's") "Motion to Dismiss Counterclaim" ("Motion") filed on April 9, 2018. ECF No. 8. Defendant/Counter-Claimant Board of Education of Las Cruces Public Schools ("Defendant") responded on April 21, 2018. ECF No. 13. Plaintiff replied on May 3, 2018. ECF No. 16. On June 22, 2018, the Court held a hearing on the Motion to obtain additional information and argument from the parties. ECF No. l9. Having considered the parties' oral and written submissions, the record, and governing case law, the Court concludes that the Motion should be granted for the reasons that follow.

**I.    BACKGROUND**

Plaintiff is the parent of L.B., a minor child and student living within the boundaries of the Las Cruces Public Schools District ("the District"). Pl.'s Compl. ¶ 5, ECF No. 2. Plaintiff maintains that L.B. is a child with a disability who should have qualified for special education eligibility under the Individuals with Disabilities in Education Act ("the IDEA"). *Id.*, *see* 20 U.S.C. § 1400 *et seq.* (2016).

---

[1] This Court is presiding as the trial court in this matter, having received the consent of the parties pursuant to Federal Rule of Civil Procedure 73(b) and 28 U.S.C. § 636(c). ECF Nos. 10, 14.

1

L.B. attended Camino Real Middle School, a school within the District, throughout the 2016-17 school year. *See* Pl.'s Compl. ¶¶ 5, 16. In that time, L.B. demonstrated noncomforming behaviors that culminated in his being subject to disciplinary measures by the District on May 1, 2017. *Id.* ¶¶ 17, 22-23. Plaintiff alleges that the District's failure to develop an individualized educational program for L.B. prior to imposing punishment denied L.B. the free appropriate public education guaranteed to him by the IDEA. *See id.* ¶ 27. *See also* 20 U.S.C. § 1400(d)(1)(A) (guaranteeing that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living"). On May 4, 2017, the District crafted Plaintiff's first individualized educational program. Pl.'s Compl. ¶ 24.

On July 31, 2017, Plaintiff challenged the District's actions by requesting a due process hearing with the New Mexico Public Education Department ("NMPED"). *See id.* ¶ 10. NMPED thereafter appointed a due process hearing officer ("DPHO") who conducted a five-day hearing in September 2017. *Id.* ¶ 11. The DPHO issued his decision on November 14, 2017, finding against Plaintiff and concluding generally that L.B. had not been denied a free appropriate public education by the District. *See id.* ¶ 12.

The parties stipulate that Plaintiff timely filed his appeal of the DPHO's decision to this Court on December 14, 2017. *See id.* ¶¶ 13-14, Def.'s Answer and Countercl. ¶¶23-24, ECF No. 4. *See also* N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a) (2018) ("Any party aggrieved by the decision of a hearing officer in an IDEA matter has the right to bring a civil action in a state or federal district court . . . within 30 days of the receipt of the hearing officer's decision by the

appealing agency."). On March 19, 2018, the District filed its Original Answer and Counterclaim, which gave rise to the current controversy. ECF No. 4.

## II. PLAINTIFF'S MOTION

Plaintiff filed the instant Motion under Federal Rule of Civil Procedure 12(b) urging this Court to dismiss Defendant's counterclaim on two grounds. First, Plaintiff challenges the Court's jurisdiction to hear the counterclaim, as he contends that it constitutes an untimely appeal of the DPHO's decision under both federal and state law. *See* Pl.'s Mot. 2-3. *See also* FED. R. CIV. P. 12(b)(1) (allowing a party to move for dismissal based on lack of subject-matter jurisdiction); N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a) (setting thirty-day period for judicial appeals of DPHO decisions). Additionally, Plaintiff argues that Defendant is not an "aggrieved party" for purposes of the IDEA, thereby depriving this Court of jurisdiction to hear its counterclaim and depriving the counterclaim of any basis upon which this Court could grant relief. *See* Pl.'s Mot. 3-4. *See also* FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(b)(6) (allowing a party to move for failure to state a claim upon which relief can be granted); N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a) (allowing only an "aggrieved party" to bring a civil action challenging a DPHO's decision).

## III. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(1)

"A 12(b)(1) motion is the proper avenue to challenge the court's subject matter jurisdiction, and Rule 12(h)(3) requires that '(w)henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Barnson v. United States*, 531 F. Supp. 614, 617 (D. Utah 1982). Such motions may take one of two forms. First, "a facial attack on the complaint's allegations as to subject matter

jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing motions of this type, "a district court must accept the allegations in the complaint as true." *Id.* Second, "a party may go beyond allegations contained in the complaint and challenge facts upon which subject matter jurisdiction depends." *Id.* at 1003. In evaluating motions brought under the second form, the Tenth Circuit explained:

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Id.* (internal citations omitted). Accordingly, this Court reviews the face of the complaint and any relevant external materials to determine whether Plaintiff has presented claims within the Court's jurisdiction, a necessary prerequisite for adjudication on the merits. FED. R. CIV. P. 12(b)(1); *see also Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th Cir. 2015) (holding that lack of subject matter jurisdiction precludes reaching the merits of a dispute).

### B. Motions to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A plaintiff's complaint (or a defendant's counterclaim) must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough for a claimant to just set forth labels, conclusions, and formulaic recitation of the elements of a cause of action. *Id.* When reviewing a complaint for Rule 12(b)(6) purposes, the Court must accept all well-pleaded allegations as true. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court must view the allegations in the light most favorable to the claimant. *Id.* The Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th

4

Cir. 2012). "This plausibility standard does not require evidence of probability, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

At first blush, Plaintiff's grounds for dismissal appear routine. Closer examination, however, reveals that neither proposition falls neatly within the four corners of settled law within this circuit, and neither can be counted among the frequently litigated topics in the federal courts. Were that not enough, neither ground may be understood without at least a basic understanding of how and when parties may appeal administrative decisions issued pursuant to the IDEA. Thus, to craft its decision, the Court will first explore relevant sections of the IDEA, followed by a sequential analysis of Plaintiff's two claims.

### A. The IDEA

The IDEA creates an "enforceable substantive right to public education." *Honig v. Doe*, 484 U.S. 305, 310 (1988) (citation omitted). Further, the IDEA seeks to ensure that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). Providing a FAPE is achieved through the development of an individualized education program ("IEP"), tailored for each child with a disability. 20 U.S.C. § 1414(d)(1)(A).

Under the IDEA, a FAPE must provide disabled children with meaningful access to the educational process. *See Board of Educ. v. Rowley,* 458 U.S. 176, 192 (1982) ("[I]n seeking to provide . . . access to public education, Congress did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful.").

Meaningful access dictates that a disabled child must be provided educational benefits in the least restrictive and most appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children. *See* 20 U.S.C. § 1412(a)(5)(A). The IDEA does not require, however, a school district to provide a disabled child with the best possible education. *See Rowley,* 458 U.S. at 192.

The IDEA imposes on the states, in return for receiving federal funding, the obligation to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of" a FAPE. 20 U.S.C. § 1415(a). The IDEA specifies the procedures to be established, including an opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Upon filing an administrative complaint, a parent is entitled to an impartial due process hearing to be conducted either by a state or local educational agency. 20 U.S.C. § 1415(f)(1). If the local agency holds the hearing, then the parent may appeal to the state educational agency, which must "conduct an impartial review." 20 U.S.C. § 1415(g).

A "party aggrieved by the findings and decision" in the due process hearing who cannot appeal to the state educational agency or a party aggrieved by the findings and decision of the state educational agency on appeal may seek judicial review. 20 U.S.C. § 1415(i)(2)(A).

### B. Plaintiff's First Ground for Dismissal Fails

To explain his first challenge to Defendant's counterclaim, Plaintiff directs the Court to the IDEA, which provides that a party seeking judicial review of the decision of DPHO must file a civil action within the state's "explicit time limitation for bringing such action[,]" which New Mexico regulations provide is thirty (30) days from the receipt of the DPHO's decision by the

appealing party. Pl.'s Mot. 2-3 (first citing 20 U.S.C. § 1415(i)(2)(B); then citing N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a) ("Any party aggrieved by the decision of a hearing officer in an IDEA matter has the right to bring a civil action in a state or federal district court . . . within 30 days of the receipt of the hearing officer's decision by the appealing agency.")).

Plaintiff notes that Defendant's counterclaim was filed on March 19, 2018, which is 125 days after the DPHO's decision was issued and received by counsel for the parties. *Id*. at 3. Thus, he maintains that Defendant's "civil action" challenging portions of the DPHO's decision, filed as a "counterclaim," is untimely pursuant to the federal mandate (as made explicit in state law) that requires filing of any civil action by a date certain. *See id.* (citing 20 U.S.C. § 1415(i)(2)(B); N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a)). And as a result, he concludes that Defendant's "failure to file the civil action timely defeats this court's jurisdiction" over the counterclaim under Rule 12(B)(1). *See id.*

Defendant begins its response by citing to three separate circuits for the proposition that "an IDEA action filed in federal district court is properly characterized as an original 'civil action,' not an 'appeal.'" Def.'s Resp. 2, ECF No. 13 (quoting *Jonathan H. v. Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009) and citing *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 387 (4th Cir. 2000); *S.J. v. Issaquah Sch. Dist. No. 411,* 470 F.3d 1288, 1292 (9th Cir. 2006) (finding an IDEA action to be a new civil action)). Correspondingly, Defendant argues that this proceeding is governed by the Federal Rules of Civil Procedure. *Id.* (citing *Kirkpatrick*, 216 F.3d at 387-88, *S.J.*, 470 F.3d at 1292).

Defendant explains that the counterclaim filed herein "is a compulsory counterclaim[2] pursuant to [Federal Rule of Civil Procedure] 13(a)". *Id.* It further asserts – and cites to two

---

[2] Subject to restrictions that the Federal Rules of Civil Procedure and federal court jurisdiction impose, a defendant may bring a counterclaim in a pending action to assert any and all claims that he has against the plaintiff. *See* FED.

7

unpublished district court cases from outside the circuit for support – that "[t]he filing of a compulsory counterclaim is not a civil action." *Id.* (citations omitted). Thus, Defendant contends, it "has the right to file a counterclaim herein, despite the fact that it was a prevailing party in the due process proceeding." *Id.* at 2-3. Defendant argues that the plain language of the statute ensures that "the IDEA and its implementing state regulation limit only the right of the non-prevailing party to bring a civil action, not the right of a defendant to file a counterclaim." *Id.* at 3 (citing *Jonathan H.*, 562 F.3d at 529). And, "because a counterclaim is timely filed if it is filed within the time period permitted for filing an original answer," Defendant argues that its counterclaim – filed within the time permitted for an original answer - is timely filed. *See id.*

### 1.   Counterclaim vs. civil action

The issue of whether Defendant's counterclaim represents a "civil action" subject to the 30-day IDEA/New Mexico regulatory time limit, or a compulsory counterclaim subject only to the timelines of the Federal Rules of Civil Procedure, appears to be one of first impression. Neither the Tenth Circuit nor the District of New Mexico have opined on the subject.

For his part, Plaintiff directs this Court to no authority beyond his construction of the statute to support his view on the timeliness of Defendant's counterclaim. By contrast, Defendant directs this Court to the seminal case on this subject, *Jonathan H.*, in which the Third Circuit opined:

> We begin by observing that an IDEA action filed in federal district court is properly characterized as an original "civil action," not an "appeal." *See* 20

---

R. CIV.P. 13. Under Rule 13, counterclaims are categorized as either being "compulsory" or "permissive." FED. R. CIV .P. 13(a), (b). A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a); *see Arch Mineral Corp. v. Lujan,* 911 F.2d 408, 412 (10th Cir. 1990). A permissive counterclaim, on the other hand, is "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(b). A compulsory counterclaim, as distinguished from a permissive counterclaim, must be pled or is barred. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n.1 (1974); *Zimmerman v. First Fed. Sav. & Loan Ass'n,* 848 F.2d 1047, 1053 (10th Cir. 1988).

U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision . . . shall have the right to bring a *civil action*.") (emphasis added); *see also S.J. v. Issaquah Sch. Dist. No. 411,* 470 F.3d 1288, 1292 (9th Cir. 2006) (finding an IDEA action to be a new civil action); *Kirkpatrick v. Lenoir County Bd. of Educ.,* 216 F.3d 380, 387 (4th Cir. 2000) (same). Because a case brought pursuant to the IDEA is an original civil action rather than an appeal, it is governed by the Federal Rules of Civil Procedure. *See Kirkpatrick,* 216 F.3d at 387–88.[3]

Pursuant to the Federal Rules of Civil Procedure, civil actions are initiated by a complaint and the responsive pleading is an answer, counterclaim, or motion to dismiss. *See* FED. R. CIV. P. 3, 13(a), 12(a). In this case, Souderton filed an answer with a compulsory counterclaim. We must decide whether Souderton's compulsory counterclaim is an "action" under the IDEA, which would subject it to the 90 day statute of limitations.

The word "action," without more, is arguably broad enough to encompass any type of judicial proceeding, including counterclaims. *See United States v. P.F. Collier & Son Corp.,* 208 F.2d 936, 938 (7th Cir. 1953) ("If the question were one of first impression, we would have no difficulty in reaching the conclusion that the words 'any action, suit or proceeding' are sufficiently broad in their ordinary and commonly accepted meaning to encompass every form and kind of litigation."); *see also* BLACK'S LAW DICTIONARY 28–29 (7th ed. 1999) (defining an "action" as, inter alia, "[a] civil or criminal judicial proceeding"). *Cf.* U.C.C. § 1–201(1) ("'Action' in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined.").

In determining whether an "action" encompasses counterclaims in the IDEA context, we turn first to the statutory language. "The meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.,* 502 U.S.

---

[3] The seminal case explaining whether an IDEA action constitutes a civil action or administrative appeal is *Kirkpatrick*. There, the Fourth Circuit stated:

> Thus, as an initial matter, the statute makes specific reference to a "civil action," not an "appeal." The drafters clearly knew the distinction between a civil action and an appeal. While the statute explicitly affords an aggrieved party a right to *appeal* from the local educational agency to a state review officer, *see id.* § 1415(g), it explicitly gives an aggrieved party who has exhausted his administrative remedies the right to "bring a *civil action*" in federal or state court. *Id.* § 1415(i)(2)(A). This distinction appears to have been deliberate. When the House of Representatives first passed the predecessor statute to the IDEA, the language provided for appeals to be taken from both the initial local agency and the state review officer's decision. That language was dropped, however, and replaced with the present statutory language, which grants the aggrieved party the right to "bring a civil action" following the state review officer's decision. *See* U.S. CODE CONG. & ADMIN. NEWS 1480, 1501, 1503 (1975); *see also Tokarcik v. Forest Hills Sch. Dist.,* 665 F.2d 443, 448 (3d Cir.1981).

*Kirkpatrick v. Lenoir Cty. Bd. of Educ.*, 216 F.3d 380, 384 (4th Cir. 2000).

> 215, 221 (1991). Here, the IDEA states: "Any party aggrieved by the findings . . . shall have the right to *bring a civil action* with respect to the complaint presented pursuant to this section . . . . The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action." 20 U.S.C. § 1415(i)(2)(A) and (B) (emphasis added).
>
> The phrase "bring an action" is defined as "to sue; institute legal proceedings." BLACK'S LAW DICTIONARY (8th ed. 2004). Therefore, an action is "brought" when a plaintiff files a complaint, which is the first step that invokes the judicial process. *See* FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."); *id.* Advisory Committee Note ("The first step in an action is the filing of the complaint."). Unlike the proactive nature of a complaint, a counterclaim is reactive because it is filed only after the plaintiff has initiated the case by bringing a civil action. Indeed, a counterclaim is a "claim for relief asserted against an opposing party after an original claim has been made." BLACK'S LAW DICTIONARY 353 (8th ed. 2004); *see also* 3 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 13.90(2)(a), at 13–79 (3d ed. 1997) ("Only defending parties may assert counterclaims."). Counterclaims are therefore "generally asserted in the answer" to a previously filed complaint. Moore, *supra,* § 13.92, at 13–88.
>
> In light of the foregoing, a defendant does not "bring an action" by asserting a counterclaim; only a plaintiff may "bring an action" for purposes of the IDEA. The defendant then files a responsive pleading - in this case, the answer, *see* FED. R. CIV. P. 12(a) - in which it can include a claim for relief against the opposing party, *see* FED. R. CIV. P. 13(a). Section 1415(i)(2)(B) limits a party's right to "bring an action" to within 90 days after the final administrative decision. Thus, the plain language of the statutory text does not limit a party's right to pursue a counterclaim because the assertion of a counterclaim is not "bring[ing] an action." In this case, Souderton's compulsory counterclaim was timely pleaded under Rule 13(a) of the Federal Rules of Civil Procedure. Accordingly, we hold that the IDEA does not bar Souderton's counterclaim.

*Jonathan H.*, 562 F.3d at 529–30.

Clearly, the *Jonathan H.* holding resolves Plaintiff's first ground for dismissal and does so in Defendant's favor. No holding of the Tenth Circuit discusses this issue nor serves to call the Third Circuit's highly persuasive ruling into question. Furthermore, the Fourth, Fifth, and Ninth Circuits are in accord with the Third Circuit's holding. *See Kirkpatrick,* 216 F.3d at 387 (Fourth Circuit holding that IDEA actions are civil actions, not appeals); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 206 (5th Cir. 2015) (concluding that a

10

compulsory counterclaim under the IDEA is not "bringing an action"); *S.J.*, 470 F.3d at 1292 (Ninth Circuit holding the same). One district court in New York may have summarized it best: "To the extent Congress saw the need to speak with greater clarity to express when an aggrieved party could institute a civil action, it would be odd indeed if, through a coy silence, it also instructed federal courts to rummage around in states' laws for a time limit to apply to IDEA counterclaims." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 219 F. Supp. 3d 421, 483 (S.D.N.Y. 2016). The Court agrees with the detailed and well-reasoned holding in *Jonathan H.*, and therefore holds that Defendant's counterclaim was timely filed. As a consequence, the Court **DENIES** Plaintiff's first ground for dismissal.

### C. Plaintiff's Second Ground for Dismissal Is Meritorious

As his second ground for dismissal, Plaintiff argues that Defendant is not an "aggrieved party" for purposes of the IDEA, thereby depriving this Court of jurisdiction to hear its counterclaim and depriving the counterclaim of any basis upon which this Court could grant relief. *See* Pl.'s Mot. 3-4. *See also* FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(b)(6) (allowing a party to move for failure to state a claim upon which relief can be granted); N.M. ADMIN. CODE § 6.31.2.13(I)(24)(a) (allowing only an "aggrieved party" to bring a civil action challenging a DPHO's decision). Plaintiff cites to two circuit cases and one District of New Mexico case in support,[4] which lead him to reason that Defendant is not an aggrieved party capable of filing suit

---

[4] These three cases reinforce the proposition that a prevailing party cannot propound an initial civil action under IDEA or its precursor statute. *See* Pl.'s Mot. 3-4. (citing *B.D. v. District of Columbia*, 817 F.3d 792, 800-802 (D.C. Cir. 2016) (holding that a party cannot enforce a favorable remedy in court after IDEA due process hearing since party is not "aggrieved" when remedy was awarded); *Robinson v. Pinderhughes,* 810 F.2d 1270, 1275 (4th Cir. 1987) (finding that Maryland law giving effect to the "Education of the Handicapped Act" ("EHA" – the precursor to IDEA) does not provide access to the courts except to the aggrieved or losing party, and the state claims were properly dismissed because the plaintiffs were not aggrieved by the administrative decision); *Miller ex rel S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 455 F. Supp. 2d 1286, 1303 (D.N.M. 2006) (the "harmless error" rule applies to evidentiary rulings in this context because the IDEA does not give Plaintiffs the right to bring a civil action for judicial review of the administrative proceedings conducted pursuant to that statute unless and until they are "aggrieved" by the result of those proceedings).

11

– or a counterclaim - under the IDEA. *See id.* at 4. Plaintiff closes with a Rule 12(b)(6) argument by citing to the D.C. Circuit for the proposition that "[the] prevailing party seeking judicial review of IDEA must be 'aggrieved' by the decision; absence of 'aggrieved party' status is not jurisdictional, but simply means there is no cause of action under the statute." *Id.* (quoting *B.D. v. District of Columbia*, 817 F.3d 792, 802 (D.C. Cir. 2016)).

Defendant offers little authority to counter Plaintiff's position. Indeed, at the outset, Defendant "acknowledges that it was the prevailing party under the DPH Decision, and as such, [it] had no reason to file an original civil proceeding in this Court based on the DPH Decision." Def.'s Resp. 2. And, rather than directing this Court to authority, Defendant simply reasons as follows:

> [A]llowing the counterclaim to be brought and relate back serves the IDEA's purposes by forcing the parties to rationally weigh the need for and assess the risks of continued litigation more carefully, requiring them to consider that any success attained at the lower level may be lost. Conversely, barring a party's counterclaim penalizes the non-litigious party by depriving them of the ability to defend itself fully and would only encourage and reward last-minute filings, leaving the litigious party in an enhanced position, with no risk of loss of any success they may have already achieved, and no worries about what a balanced review of the underlying decision may bring. In such a no-lose situation, there is no check on additional litigation, which clearly is not a policy the IDEA advances.

*Id.* at 4. Ultimately, Defendant maintains that its counterclaim "should not be dismissed, and [it] should be permitted to maintain its challenges against Plaintiff for the Court's consideration." *Id.* at 5.

1. **Supplemental argument and briefing**

On June 22, 2018, the Court held oral argument on Plaintiff's Motion. *See* ECF Nos. 18 (Order Setting Hearing), 19 (Clerk's Minutes). As to Plaintiff's first ground for dismissal, the Court signaled its clear intent at the hearing, which it has memorialized *supra*. As to Plaintiff's

second ground, the Court deferred ruling from the bench and instead ordered the parties "to search for any other case in which a school district was not ordered by a DPHO to do a single thing, yet they were still allowed to litigate either an original civil action or a counterclaim to change findings and conclusions that were part of the decision that ordered them to do nothing." Clerk's Minutes 5, ECF No. 19.

On July 6, 2018, Defendant responded to the Court's Order by filing its "Response to Plaintiff's Motion to Dismiss Counterclaim, and in the Alternative, Motion for Leave of Court to Amend its Answer" ("Supp. Resp."). ECF No. 21. Therein, Defendant acknowledges that the issue of whether a "counterclaim [is] the appropriate procedure to challenge the findings and conclusions of a [DPHO] even [where] no relief was awarded" appears "to be one of first impression in the Tenth Circuit and in New Mexico." Def.'s Supp. Resp. 2, ECF No. 21. Outside the Tenth Circuit, however, Defendant was able to locate only a single district court case where a court held that a school district could challenge an adverse DPHO finding on its own – even where no relief was awarded – through the filing of a counterclaim. *See id.* (citing *S.C. by & through N.C. v. Chariho Reg'l Sch. Dist.*, 298 F. Supp. 3d 370, 380-81 (D.R.I. 2018)).

On July 6, 2018, Plaintiff also filed his "Supplemental Reply in Support of Motion to Dismiss Counterclaim" ("Supp. Reply"). ECF No. 22. Plaintiff reports he "was unable to find *any* cases in which a school district filed an IDEA civil action or counterclaim to *challenge findings* where it was the prevailing party." Pl.'s Supp. Reply 1, ECF No. 22 (emphasis in original). Based on these results, Plaintiff concludes that, "[t]he absence of cases about [a] school district[ ] litigating findings, unattached to an order against it, underlines the hypothetical realm of [Defendant's] counterclaim endeavor." *Id.* at 2.

## 2. The text of the IDEA directs dismissal of Defendant's counterclaim

Fundamentally, this Court must decide whether Defendant, being a prevailing party against which no relief <u>at all</u> was ordered by the DPHO, may nevertheless contest discrete findings of the DPHO through a counterclaim to the aggrieved student's civil action. Defendant would answer this question in the affirmative. And the District of Rhode Island apparently concurs. *See* 298 F. Supp. 3d at 380-81. This Court, however, believes both have misconstrued the plain text of the IDEA.

The IDEA provides that any "party aggrieved by the findings *and* decision" of a DPHO or - in those states where the mechanism exists, the state educational agency - may seek judicial review. 20 U.S.C. § 1415(i)(2)(A) (emphasis added). When terms are connected by a conjunctive term in a statute - such as the term "and" - courts normally interpret the statute as requiring satisfaction of both of the conjunctive terms to trigger application of the statutory provision. *See Bruesewitz v. Wyeth LLC,* 562 U.S. 223, 236 (2011) ("[L]inking independent ideas is the job of a coordinating junction like 'and' . . . "). *Compare Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (recognizing that the ordinary use of the term "or" is almost always disjunctive, that is, the words it connects are to be given separate meanings."). Thus, under the U.S. Supreme Court's canons of construction, to constitute an aggrieved party for purposes of propounding an IDEA appeal, a party must be aggrieved *both* by administrative findings *and* by an administrative decision.

Defendant admits that the DPHO imposed neither compensatory services nor corrective actions upon it; in other words, that the DPHO decision had no tangible effect upon it. Clerk's Minutes 1. Nevertheless, Defendant maintains that it is an "aggrieved party" for purposes of maintaining a counterclaim under the IDEA. *Id.* at 2. Defendant's position is bolstered by *S.C.*,

14

where the District of Rhode Island held that the Chariho School District "was 'aggrieved' by the finding that it had failed to provide [a] FAPE to S.C." *S.C.*, 298 F. Supp. 3d at 381. The *S.C.* court reasoned that "the text of the IDEA specifically allows parties aggrieved by *findings* to file suit in federal district court to overturn a hearing officer's decision." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)) (emphasis in original). And, because the district failed to contest the administrative findings through a counterclaim, the *S.C.* court deemed their challenges waived. *See id.*

This Court respectfully disagrees with its sister court in Rhode Island. First, this Court considers itself bound by the U.S. Supreme Court's canons of construction, and cannot ignore that the IDEA requires a party to be aggrieved both by the findings and by the decision of a DPHO (or state education agency) before that party is invested with standing to initiate a civil action. *See* 20 U.S.C. § 1415(i)(2)(A); *Bruesewitz*, 562 U.S. at 236. Here, the district, by its own admission, seeks only to reverse the DPHO's finding that it committed a procedural error. Clerk's Minutes 1. That grievance, absent the imposition of some compensatory service, corrective action, or levy of damages in the DPHO's decision, simply does not suffice to confer standing to file a claim or counterclaim under 20 U.S.C. § 1415(i)(2)(A). Defendant was ordered to pay *nothing* and to do *nothing*. Ergo, no counterclaim is cognizable.

Second, the Court believes that the *S.C.* court underestimated the discretion of the district courts to review an administrative decision under the IDEA. The extraordinary breadth of the court's review is contained in section 1415(i)(2)(C), which requires the district courts to (1) receive the record of the administrative proceedings, (2) hear additional evidence at the request of a party, and (3) base their decisions on the preponderance of evidence. 20 U.S.C. § 1415(i)(2)(C). In one sense, "[j]udicial review in IDEA cases differs substantially from judicial

review of any other agency action, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Murray By & Through Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995); *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 973 (10th Cir. 2004) (stating that the IDEA "sets up a unique standard for a federal court's review"). Under this "modified *de novo*" approach, the Court reviews legal challenges *de novo*, without deference. *See O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 699 (10th Cir. 1998). *See also T.S. v. Indep. Sch. Dist. No. 54,* 265 F.3d 1090, 1093 (10th Cir. 2001) (holding that under modified *de novo* review, courts must independently review the evidence). As to findings of fact, they must be accorded "due weight" and "considered prima facie correct." *Thompson R2–J School Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 (10th Cir. 2008). But nothing in the IDEA nor in extant case law limits either party's capability to submit additional evidence or to challenge the DPHO's findings as part of this suit. At oral argument, Plaintiff's counsel confirmed as much, declaring that under the modified *de novo* approach, this Court need not adopt any of the DPHO's findings. Clerk's Minutes 5. Recognizing this, the Court believes that Defendant retains a mechanism by which to contest whatever DPHO findings it chooses, but that mechanism is not a counterclaim. By this Court's reading of the IDEA, Defendant is at liberty to ask this Court to affirm the DPHO's decision on any ground supported by the record, even if that ground was specifically rejected by the DPHO.

Therefore, because Defendant cannot maintain a counterclaim as an aggrieved party under the IDEA, it follows that Defendant cannot state a claim upon which relief can be granted, and dismissal is appropriate under Rule 12(b)(6). Accordingly, the Court **HEREBY GRANTS** Plaintiff's Motion.

## V. CONCLUSION

The Court concludes that a compulsory counterclaim under Rule 13(a) is not the proper procedural avenue for prevailing party Defendant to contest mere findings of the DPHO. Nevertheless, in the interests of allowing both sides to fairly litigate within the confines of the Court's modified *de novo* review, the Court **HEREBY GRANTS** Defendant leave to amend its Answer to reformulate its objections into affirmative defenses or any other competent form allowed by law.

**IT IS THEREFORE ORDERED** that**:**

(1) Plaintiff's Motion to Dismiss Counterclaim [ECF No. 8] is **HEREBY GRANTED**, and Defendant's Counterclaim is **DISMISSED**.

(2) Defendant is **HEREBY GRANTED LEAVE TO AMEND** its answer, with its amended answer due **thirty (30) days** from the filing of this Order.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*