## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DOMINIC BOUTELLE,**
**as Parent of L.B.,**
**Plaintiff,**

**v.**                                         **NO. 2:17-cv-01232-GJF-SMV**

**BOARD OF EDUCATION OF LAS CRUCES**
**PUBLIC SCHOOLS,**
**Defendant/Counter-Plaintiff**

### Defendant's Response and Brief in Opposition
### to Plaintiff's Motion for Consideration
### of Additional Evidence

Defendant Las Cruces Public Schools ("LCPS" or "the District") files this Response opposing Plaintiff's Motion for Consideration of Additional Evidence under IDEA. Plaintiff seeks to have the Court consider irrelevant evidence regarding events that occurred *after* the conclusion of the administrative hearing from which Plaintiff appeals. Allowing this evidence into the record would allow Plaintiff to expand the scope of this action, circumvent the administrative proceedings below, significantly diminish the "due weight" afforded to administrative rulings, and avoid the requirement under the IDEA that Plaintiff exhaust his administrative remedies. For the reasons stated below, Defendant respectfully asks the Court to deny Plaintiff's motion.

### Standard of Review

In a district court's review of a hearing officer's administrative decision, the court "shall receive the records of the administrative proceedings . . . [and] shall hear additional evidence at the request of a party." *See* 20 U.S.C.A. § 1415. "[T]he Supreme Court has interpreted the requirement that the district court receive the administrative record to mean that 'due weight' must

be given to the administrative proceedings." *Garcia*, 520 F.3d at 1125, citing *Rowley,* 458 U.S. at 206.  The hearing officer's fact findings are 'considered *prima facie* correct.'" *Garcia*, 520 F.3d at 1125 (citing *L.B. ex rel. K.B. v. Nebo Sch. Dist.,* 379 F.3d 966, 974 (10th Cir. 2004)).

"[B]ecause [additional] evidence is merely supplemental to the administrative record,'" courts must be mindful of "maintain[ing] the character of review and not rise to the level of a *de novo* trial." *Miller ex rel.S.M. v. Board of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1241 (10th Cir. 2009) (citing *L.B. ex rel. K.B. v. Nebo Sch. Dist.,* 379 F.3d 966, 974 (10th Cir. 2004)).  Accordingly, the District Court must engage in a "modified *de novo* review" and "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving "due weight" to the administrative proceedings below.  *Murray By & Through Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995) (citations omitted). "Rendering a decision on the record compiled before the administrative agency…is the norm." *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006), *citing Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996); *Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009).

Not all evidence is considered "additional evidence" and a court must exercise discretion in determining what constitutes "additional evidence." *ER. by E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 763 (5th Cir. 2018) ("The determination of what is 'additional' evidence must be left to the discretion of the trial court.") (citing *Town of Burlington v. Dep 't of Educ. for Mass.*, 736 F.2d 773, 790 (1st Cir. 1984)); *see also Monticello Sch. Dist. No. 25 v. George L. ex rel. Brock L.*, 102 F.3d 895, 901 (7th Cir. 1996) ("A district court is not required to allow all evidence

proffered by a plaintiff in an IDEA proceeding.").  In determining whether to allow additional evidence in the modified trial *de novo*, courts look to whether the proposed evidence is *"relevant to the issue properly before the district court*."  *Miller ex rel. S.M.*, 565 F.3d at 1241 (emphasis in original) (citing *Deal ex rel. Deal v. Hamilton County Bd. of Educ.,* 392 F.3d 840, 850 (6th Cir. 2004); *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 760 (3d Cir. 1995) ("While a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence *relevant,* non-cumulative, and useful in determining whether Congress' goal has been reached for the child involved." (emphasis added in citation) (other citations omitted)).

"Additional" means to supplement the record, which might be needed to address, for example, "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events subsequent to the administrative hearing." *Bd. of Educ. of Albuquerque Pub. Sch. v. Newson on behalf of A.R.*, No. CV 15-00271 WJ/WPL, 2015 WL 13651177, at *1 (D.N.M. Sept. 18, 2015) (citing *Town of Burlington*, 736 F.2d at 790)).  While *relevant* events subsequent to the administrative hearing *may* constitute appropriate additional evidence, Plaintiff must offer "solid justification" for the introduction of such evidence. *West Platte*, 439 F.3d at 785.  The courts recognize that such evidence may be properly excluded, and the court should weigh the relevance of such evidence against the harm of prolonging litigation and the danger of "turning the district court review of IEPs into a second-guessing game that will only harm the interests of the disabled children the statute was intended to serve." *Schaffer*, 554 F.3d at 476-477.

In *Schaffer*, the Fourth Circuit found that it was not an abuse of discretion for the district court to decide not to attach weight to a re-evaluation and Individualized Educational Program ("IEP") for 2000 when the IEP at issue was from 1998.   Noting that the IDEA requires school districts to re-evaluate students periodically and to revise IEPs based on new evaluation data, the Fourth Circuit decided that giving weight to this additional information presented two dangers; i.e., the new information "would become fodder for endless litigation" and "turn the district court review of IEPs into a second-guessing game."  *Id.*

## Argument

Plaintiff asks the Court to consider four documents that were never presented to, or considered by, the administrative due process hearing officer (DPHO).  Plaintiff asserts in his motion that the documents are relevant for the Court to determine the following remedies sought by Plaintiff:   "2) reimbursement to Parent for costs associated with the neuropsychological evaluation as well as the cost of the TS evaluation at Baylor; 3) ordering removal of "emotional disturbance" eligibility and directing that all IEPs going forward include information that L.B. has TS and is entitled to evidence based interventions to support him at school as consistent with professional knowledge as set forth by Tourette Association literature and guidance."  *See* Pl.'s Mot for Addt'l Evid. [Doc 43 at 2].  Plaintiff further avers that the documentary evidence also will "ensure the Court's knowledge about both Student's medical diagnosis and the LEA's acceptance of that diagnosis."  *Id.*, 2-3.

 Plaintiff concedes that none of these documents were available until after the due process hearing was decided.  Over a year has passed and only now Plaintiff files his motion for additional evidence.  However, the Court should not consider the additional evidence because Plaintiff failed

to comply with the briefing requirements required under Fed. R. Civ. P. Rule 7 of the Local Rules of the Civil Procedure of the United States District Court for the District of New Mexico. Plaintiff's motion fails to state with particularity the grounds for his motion and the authority supporting his motion, forcing Defendant to guess as to the relevancy of the documents proffered by Plaintiff.

In addition, because these documents are not relevant to the issues at hand in this action, and because allowing these documents into the record would inappropriately force the district court to recreate a trial *de novo* on new issues before the Court, Defendant urges the Court to deny the consideration of this additional evidence.

### I.     Plaintiff Waived his Right to have the Court Consider Additional Evidence because he Failed to Articulate the Reasons Justifying Consideration.

In Plaintiff's motion, he articulates his position on the governing legal standard for considering additional evidence.  However, despite conceding that the courts in this circuit require that district courts consider the relevancy, non-cumulative nature, and usefulness of such additional evidence proffered in ruling on a motion, Plaintiff fails to articulate how each document is relevant, non-cumulative, and useful.  Plaintiff admits that all four documents "were unavailable at time of the due process hearing since all three documents were created after conclusion of the IDEA due process hearing and the issuance of the DPHO's Decision."  [Doc 43 at 2].  Plaintiff then conclusively states that the documentary evidence is "relevant to Plaintiff's requested remedies numbered 2 and 3 [Doc. 31 at 27], as well as to ensure the Court's knowledge about both Student's medical diagnosis and the LEA's acceptance of that diagnosis."  *Id.*, 2-3.  Defendant can

only guess as to the grounds of the relevancy posited by Plaintiff. However, the local rules require more of Plaintiff. Specifically, the rules require:

1. A motion must be in writing and state with particularity the grounds and the relief sought. Fed. R. Civ. Proc. 7.1(a)

2. Form of Motion and Related Evidence. (a) A motion, response, or reply must cite authority in support of the legal positions advanced. Movant's authority may be submitted in a separate brief filed and served contemporaneously with the motion. (b) Movant must submit evidence, in the form of affidavits, deposition excerpts, or other documents, in support of allegations of fact. Fed. R. Civ. Proc. 7.3.

3. Movant must submit evidence, in the form of affidavits, deposition excerpts, or other documents, in support of allegations of fact. LR 7.3

**II.    Plaintiff's Additional Evidence is Neither Relevant nor Necessary.**

If the Plaintiff had prevailed at the DPH level, the DPHO may have granted Plaintiff relief in the form of an order for LCPS to pay for a neurological evaluation of L.B. Thus, to the extent that Plaintiff is entitled to any relief, only the cost of the Baylor evaluation (and not the evaluation itself) is relevant.

The central issues in this case are whether, at the time of L.B.'s violation of the student code of conduct which resulted in L.B. being sent to an alternative disciplinary campus (i.e., throwing a rock and hitting a peer), LCPS officials overlooked clear signs that L.B. had a disability, including Tourette Syndrome ("TS"), were negligent in failing to order testing, and had no rational justification for not deciding to evaluate L.B. for a disability. *See Morrison v. Los Lunas Pub. Sch.*, No. CV 12-143 JCH/RHS, 2013 WL 12330019, at *9 (D.N.M. May 28, 2013) (citing *Bd. of*

*Educ. of Fayette Cnty., Ky. v. L.M.,* 478 F.3d 307, 313 (6th Cir. 2007). Plaintiff also asserts that L.B. is not a student with an emotional disturbance. In examining a motion to consider additional evidence, the courts look to whether the proposed evidence is relevant to the issue properly before the court. *Miller ex rel. S.M.*, 565 F.3d at 1241. The district courts also exercise discretion in determining whether the proposed additional evidence is necessary. *O'Toole v. Olathe Dist. Schools Unified Sch. Dist. No. 233*, 144 F.3d 692, 708 (10th Cir. 1998). The four documents proffered by Plaintiff are neither relevant nor necessary for the Court to decide the issues before it. Plaintiff introduced a private evaluation by Dr. Jo Velasquez obtained by Plaintiff [Petitioner's Exhibit 20; Doc. 25-6:168-182] as evidence in the DPH proceeding that L.B. is a student with a disability. That evaluation (which was considered by LCPS in developing the IEP at issue in the DPH Proceeding) diagnosed L.B. with Disruptive Mood Dysregulation Disorder. Nothing in the documents proffered by Plaintiff as additional evidence addresses the diagnosis by Dr. Velasquez or the eligibility of L.B. as a student with an emotional disturbance. Under the IDEA, "[e]motional disturbance means a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects the child's educational performance:

- An inability to learn that cannot be explained by intellectual, sensory, or health factors;

- An inability to build or maintain satisfactory interpersonal relationships with peers and teachers;

- Inappropriate types of behavior or feelings under normal circumstances;

- A general pervasive mood of unhappiness or depression; or

- A tendency to develop physical symptoms or fears associated with personal or school problems.

34 C.F.R. § 300.8(c)(4)(i).   Nothing in the IDEA provides that a child with an emotional disturbance cannot also be a child with an other health impairment, including TS.   The documents proffered by Plaintiff are therefore not likely to make it more or less probable that L.B. is a student with an emotional disturbance.

Should the Court consider the additional evidence of Plaintiff, it would change the central issues litigated in the due process hearing and require the Court to engage in a trial *de novo*. Defendant raises its objections to each of the documents proffered by Plaintiff.

### A.  The evaluation report on L.B. by Dr. Joseph Jankovic, 11/29/2017.

More than fifteen months following the DPHO's decision on November 14, 2017 [Doc 25-5: 424-486] and over four months after Plaintiff submitted his IDEA Brief in Chief [Doc. 31], Plaintiff asks the Court to consider an evaluation performed on Plaintiff and completed by Dr. Jankovic. The evaluation is purportedly a diagnosis of L.B. with TS.   Although the evaluation may be useful in developing an IEP for L.B. moving forward, the document is not relevant to whether the District had reason to suspect L.B. had TS prior to the DPH hearing or to whether the IEP developed by the District in April, 2017, was appropriate based on the circumstances known at the time.   Plaintiff is now attempting to backdoor the November 2017 diagnosis of L.B. with TS as though that evaluation is relevant to the District's determination occurring earlier during the year.

As noted above, the evaluation also fails to make it more or less probable that L.B. is a student with an emotional disturbance.   As admitted by Plaintiff, a diagnosis of TS does not eliminate the possibility of L.B. having comorbid diagnoses.   In Plaintiff's IDEA Brief in Chief [Doc. 31], Plaintiff acknowledges, for example, that both Attention Deficit Hyperactivity Disorder ("ADHD"), for which L.B. is eligible for special education , and Obsessive Compulsive Disorder

8

("OCD") can be comorbid conditions to TS.  Plaintiff has failed to show how any of the additional evidence offered is relevant to the issue of whether L.B. is a student with an emotional disturbance.

In the DPH proceeding, the DPHO considered the facts available to the District during the limitations period.  The District convened a Student Assistance Team ("SAT") in October 2016 to address some initial behavioral issues with L.B.  (DPHO FF7[1]).  As the record notes, all indications were that, following his separation from his mother, L.B. was suffering from a temporary adjustment order, which the SAT determined should respond to positive behavioral interventions.  (RPFF 10, 26, 28; Tr. 182:6-183:13; 247:13-21; 383:10-20; 1135:18-1137:1; 1040:16-1041:7; 1135:18-1137:1.)  The SAT implemented positive behavioral interventions for L.B., which initially had good results.  (DPHO FF16; RPFF 31-33; RPFF 35, 40-41.)  When L.B.'s behavior problems escalated, the SAT reconvened in February 2017 and proposed a psychological screening to determine whether there was reason to suspect a disability condition.  (RPFF 23-26.)  Following the SAT meeting, L.B.'s father and the SAT agreed to delay the psychological screening because Plaintiff was in the process of having a private evaluation performed.  (DPHO FF 27.)  Once the private Comprehensive Neuropsychological evaluation was completed and presented to the District in April 2017 by Plaintiff, the District accepted the evaluation.  (DPHO FF 67.)

Relevant evidence is that evidence that 1) has a tendency to make a fact more or less probable than it would be without the evidence; and 2) is of consequence in determining the action. Fed. R. Evid. 401.  Here, Plaintiff carries the burden of demonstrating that the DPHO erred because the District defaulted on its Child Find obligation and L.B.'s IEP was not reasonably calculated to

---

[1] Reference to the DPHO's findings of fact [Doc 25.5:440-453] are referenced as "DPHO FF."  References to the District's proposed findings of fact in the DPH, with related citations to the Record Proper, are referenced herein as "RPFF."  References to the DPH Proceeding Transcript [Doc. 25 – 25.4] are referenced as "Tr."

provide L.B. with a free, appropriate public education ("FAPE").  [Doc. 31 at 11]; *Johnson v. Indep. Sch. Dist.* No. 4, 921 F.2d 1022, 1008, n.4 (10th Cir. 1990) (party challenging the IEP carries the burden of proof).  Dr. Jankovic's evaluation, completed over a year past the original behavioral interventions proposed by the SAT and over seven months past the District's identification of L.B. for special education services, does not make any facts more or less probable in determining any of the issues before the Court.  The Court should deny the evidence because the evidence is not relevant in determining whether the District overlooked clear factors of L.B.'s disability or acted negligently at the time of the behavioral interventions.

As noted further above and in Defendant's Response to Plaintiff's IDEA Brief in Chief [Doc. 32 at 7-11 fully incorporated by reference], there was a "rational justification" for the District not deciding to evaluate L.B. sooner as the District weighed the particular circumstances of L.B. who, as a sixth-grade middle school student, was undergoing several challenges as he changed homes, cities and parenting styles between his mother and father.  The DPHO weighed all of the evidence and found that the District did not have reason to suspect that L.B. was a student with a disability until March, 2017 (DPHO FF 45-46).  Dr. Jankovic's evaluation completed on Nov. 29, 2017 would not present the Court with evidence of any clear signs a disability prior to March, 2017; nor would it demonstrate that the District was negligent in failing to order testing or that L.B.'s April, 2017, IEP was not reasonably calculated to provide L.B. with a FAPE.  *See Morrison*, No. CV 12-143 JCH/RHS, 2013 WL 12330019, at *9 (D.N.M. May 28, 2013) (citing *Bd. of Educ. of Fayette Cnty., Ky.*, 478 F.3d 307)); *Bernardsville*, 42 F.3d at 161; *Schaffer*, 554 F.3d at 476-477.

Allowing Dr. Jankovic's evaluation to come in as hindsight 20/20 evidence in the district court would also greatly diminish the "due weight" afforded to the administrative process and undercut the role of school authorities making sound educational policy. *See Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982) (A reviewing court's "decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at naught."); *see also Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1,* 137 S. Ct. 988, 1001, 197 L. Ed. 2d 335 (2017) ("[D]eference is based on the application of expertise and the exercise of judgment by school authorities. The Act vests these officials with responsibility for decisions of critical importance to the life of a disabled child."). The administrative hearing is not intended to be a "mere dress rehearsal." *Schaffer*, 554 F.3d at 476.

In considering additional evidence, the courts weigh important factors, such as the importance of not "undercut[ting] the statutory role of administrative expertise, [the unfairness involved in one party's reserving its best evidence for trial], [] and the conservation of judicial resources." *Newson*, WL 13651177, at *1 (citing *Town of Burlington*, 736 F.2d at 791). Here, the weighing of these factors counsels against admitting the evidence. The introduction of this new evidence undercuts the role of the DPHO's expertise by changing the issues and the facts of this case, resulting in a trial *de novo*. The consideration of this new evidence also would require Defendant to conduct additional discovery and briefing on these new issues. Accordingly,

Defendant asks the Court to deny the consideration of Dr. Jankovic's November 29, 2017 evaluation of L.B.

Finally, as noted by the Fourth Circuit, this Court's review should be limited to the issues considered by the DPHO (not prospective IEPs), as the IDEA tasks the IEP team with reviewing and revising L.B.'s future IEPs. An order, as requested by Plaintiff, that this Court "direct" the IEP team to include specific information, eligibility or interventions in "all IEPs going forward" would circumvent the purpose of the IEP team, to which the U.S. Supreme Court gives "deference…based on the application of expertise and the exercise of judgment by school authorities. The Act vests these officials with the responsibility for the decisions of critical importance" in developing the IEP. *Endrew* 137 S.Ct. at 1001. The IEP is to be reviewed and revised at least annually based on the student's *present* levels of academic achievement and functional performance. 34 C.F.R. § 300.320 (a)(1), 300.324(b)(1)(i); *Schaffer*, 554 F.3d at 476. An IEP is to be based on information available to the IEP team at the time it is developed. The IDEA recognizes that children change over time, but the statute affirmatively requires school districts to create and analyze new information…" *Id.* (internal citations omitted).

**B.     A. Billing/Payment records for Baylor evaluation.**

For the same reasons cited above in response to Plaintiff's request for consideration of Dr. Jankovic's evaluation of L.B., the Court should not admit the billing and payment records for the Baylor evaluation. The billing and payment records for the November 29, 2017 evaluation are not relevant or necessary for the Court to determine any of the issues in this case.

**C.     LCPS Multidisciplinary Evaluation Team documents for L.B., 3/8/2018**

Plaintiff also wants the Court to consider documents from the LCPS Multidisciplinary Evaluation Team ("MET") dated several months after the DPH hearing.  Similar to Dr. Jankovic's November 29, 2017 evaluation report, the LCPS MET documents are not relevant to determining whether the District properly engaged in its Child Find obligations in the 2016-17 school year. The MET represents the District's evaluation of L.B. based on events and facts, including Dr. Jankovic's evaluation, completed a year after the circumstances that form the basis for the current action.  While Plaintiff claims they are relevant to show the District accepted Dr. Jankovic's diagnosis, the MET and March 8, 2018 IEP actually show that the District determined L.B. does *not* require special education and related services due to TS, but rather that his need for special education and related services is the result of his emotional disturbance and ADHD.  To be eligible for services under the IDEA, a child must *both* have a disability and by reason of that disability, need special education.  34 C.F.R. § 300.8(a)(1).  The evaluation of Dr. Jankovic does not address either L.B.'s diagnosis of emotional disturbance or his need for special education.

Not only are the documents irrelevant to the issues before the Court, but the consideration of the MET would require the Court to engage in the type "'Monday-morning quarterbacking' in evaluating the appropriateness of a child's placement" found to be unsuitable in district court reviews.  *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143, 1149 (10th Cir. 2008) (citing *O'Toole ex rel. O'Toole*, 144 F.3d at 701-702)).  The consideration of this after-the-fact evidence would strip the "due weight" owed to the administrative proceedings and allow Plaintiff to do an end-run around the hearing occurring in September 2017.  *See Garcia*, 520 F.3d at 1125; *see Schaffer*, 554 F.3d at 477 ("…if services added to a later IEP were always used to cast doubt on an earlier one, school districts would develop a strong disincentive against updating their IEPs

based on new information.  This scenario is the exact opposite of what Congress intended when it provided for regular review and revision of IEPs.")  The MET should not be considered.

### D.     LCPS IEP for L.B. dated 3/8/2018

Plaintiff asks the Court to consider the District's IEP for L.B. initiated on March 8, 2018. Like the other documents proffered by Plaintiff, the IEP, which is based in part on Dr. Jankovic's report produced to the District in January 2018, is not relevant to deciding whether the District was negligent in overlooking L.B.'s disability approximately a year prior.  By seeking to expand the scope of these proceedings through a review of the revised IEP, the Court would need to change the character of the proceedings from a review to a trial *de novo*, which is not appropriate.  *See Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. CIV 05-0062 WPJ/WPL, 2007 WL 5023652, at *9 (D.N.M. Jan. 10, 2007), *aff'd in part sub nom. Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116 (10th Cir. 2008).

The Court's analysis as to whether the District provided L.B. with a FAPE under his IEP "is a snapshot, not a retrospective." *Dist. of Columbia v. Walker*, 109 F. Supp. 3d 58, 66 (D.D.C. 2015); *Dep't of Educ. of Haw. v. Leo W.*, 228 F. Supp. 3d 1081, 1099-1100 (D. Haw. 2016). As the Ninth Circuit has stated:

> We do not judge an [IEP] in hindsight; rather, we look to the [IEP's] goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer [Student] with a meaningful benefit . . . In striving for "appropriateness," an IEP must take into account what was, and what was not, objectively reasonable when the snapshot was taken, that is at the time the IEP was drafted.

*J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (quoting *Adams v. State of Or.*, 195 F.3d 1141, 1149 (9th Cir. 1999)).

This second-guessing of the DPHO's Decision based on evidence such as the March 2018 IEP is inappropriate, in part, because it would discourage school [] and other school systems from reassessing and updating IEPs out of fear that any addition to the IEP would be seen as a concession of liability for an earlier one." *Schaffer*, 554 F.3d at 478. Accordingly, Defendants asks the Court to decline Plaintiff's offering of the March 2018 IEP.

### III.    Plaintiff is required to exhaust his administrative remedies as to claims arising after the filing of the DPH Compliant.

Any claims arising from the Baylor Evaluation or L.B.'s IEPs created after the DPH Proceeding was filed must be exhausted through the filing of another due process proceeding with the New Mexico Public Education Department. *See Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720 (10th Cir. 1996). In *Jefferson County*, the Plaintiff filed an IDEA administrative complaint alleging that a February 14, 1992 IEP resulted in a denial of FAPE. Jefferson County developed a new IEP on May 4, 1993, after the administrative decision was reached and after the plaintiff had appealed to the U.S. District Court. Plaintiff argues that he should not be required to exhaust his administrative remedies because his complaints regarding the second IEP were the same as those raised in the administrative proceeding. The Tenth Circuit held that "[t]he purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent the parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors. *Id.* at 724, citing *Ass'n for Community Living*, 992 F.2d 1040, 1044 (10th Cir. 1993). Thus, plaintiff was required to also exhaust his administrative remedies as to the second IEP.

**IV.     Conclusion**

For the above reasons stated, Defendants respectfully urges the Court to deny Plaintiff's

Motion for Consideration of Additional Evidence and all relief requested and to grant Defendant

LCPS any and all additional relief to which it may be justly entitled.

                         Respectfully submitted,

                         WALSH GALLEGOS TREVIÑO
                         RUSSO & KYLE, P.C.


                         BY: _/s/ Evelyn N. Howard-Hand_____
                         Evelyn N. Howard-Hand
                         State Bar. No. 144001
                         *Attorney for Board of Education of Las Cruces*
                         *Public Schools*
                         500 Marquette Avenue NW, Suite 1310
                         Albuquerque, NM   87102-5316
                         Telephone: (505) 243-6864
                         Facsimile: (505) 843-9318
                         Ehand@wabsa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of March, 2019, I filed the foregoing Defendant's Response to Plaintiff's Motion for Consideration of Additional Evidence electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Gail Stewart
STEVEN GRANBERG, ATTY. AT LAW
3800 Osuna NE, Suite 1
Albuquerque, NM 87109
Email:  gstewart@66law.com
*Attorney for Plaintiff*

  /s/ Evelyn N. Howard-Hand_____
Evelyn N. Howard-Hand