UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DOMINIC BOUTELLE, as parent of
L.B, a minor child,

    Plaintiff,

v.                                                                        Civ. No. 17-1232 GJF/SMV

BOARD OF EDUCATION OF LAS
CRUCES PUBLIC SCHOOLS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon "Plaintiff's Motion for Consideration of Additional Evidence" [ECF 43] ("Motion").[1] For the reasons articulated below, the Court will grant in part and deny in part the Motion.

## I. BACKGROUND

Plaintiff filed suit in this Court, claiming Defendant Board of Education of Las Cruces Public Schools ("LCPS") denied Plaintiff's son L.B. a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et. seq*. Pl.'s Compl. 1, ECF 1. Plaintiff's main contention is that the school had reason to suspect a disability shortly after L.B. began the 2016-2017 school year and thus denied him a FAPE by not evaluating him for disability that fall. *See* ECF 31 at 11-22.[2] Because of this alleged FAPE denial,

---

[1] The Motion is fully briefed. *See* ECFs 48 (Defendant's Response), 51 (Plaintiff's Reply). Defendant has also submitted a corresponding motion for leave to file a surreply [ECF 53], which this Court will **DENY** as moot.

[2] Plaintiff also asserts that LCPS then denied L.B. a FAPE in three other ways: (1) relying, in the formation of L.B.'s Individualized Education Program ("IEP"), on a private evaluation that L.B.'s father personally procured, (2) not having L.B.'s IEP in place until later in the 2016-2017 school year, and (3) placing L.B. on long-term suspension. *Id.* at 11, 23-26.

Plaintiff asks this Court to reverse the administrative hearing officer's decision and award an equitable remedy. Pl.'s Compl. 1, 12, ECF No. 1.[3]

Shortly before the administrative hearing, Plaintiff attempted to schedule an evaluation of L.B. for TS at the "Tourette Center for Excellence at Baylor." ECF 31 at 3. During the hearing, Plaintiff argued that L.B. displayed symptoms of TS, a condition defined by "involuntary, repetitive movements and vocalizations," during the school year. *Id.* at 1-3, 18, 27; Administrative Record ("AR") 25-5, 453; AR 25-6, 312. The evaluation for TS, however, occurred after the hearing, and the resulting report, which the school apparently "accepted," was issued after the hearing officer's decision. ECF 31 at 3.

As Plaintiff had previously indicated,[4] he now moves for this Court to consider this additional evidence—supplementing the 2,603 pages of administrative record evidence that is already before this Court. Pl.'s Mot. 1; *see* ECFs 25, 30. Specifically, Plaintiff asks that this Court consider the evaluation report from the Baylor College of Medicine, including billing and payment records, and also two records created by the LCPS that purportedly show its "acceptance" of the report. Pl.'s Mot. 2-3.[5] Although all of this evidence arose *after* the hearing officer's decision that gave rise to this lawsuit, Plaintiff asserts that this evidence is nonetheless relevant in order to "ensure the Court's knowledge about both [L.B.'s] medical diagnosis and [LCPS's] acceptance of that diagnosis." *Id.* at 2-3. And should this Court rule in his favor, Plaintiff asserts that such

---

[3] As an equitable remedy, Plaintiff requests that the Court order LCPS to (1) correct L.B.'s educational records to reflect that he was "erroneously punished," (2) reimburse Plaintiff for the costs of, *inter alia*, a Tourette syndrome ("TS") evaluation, and (3) order changes in L.B.'s future IEPs, namely the removal of an "emotional disturbance" classification and the addition of an entitlement to specific TS-related interventions. ECF 31 at 27. Plaintiff also requests that the Court consider awarding attorney fees. *Id.*

[4] *Id.* at n.5 (Plaintiff stating his intention to file a separate "Motion for Consideration of Additional Evidence" regarding this evaluation report, along with documentation showing Defendant's acceptance of this report).

[5] These two records consist of "Multidisciplinary Evaluation Team" documents for L.B. and an IEP for L.B. *Id.*

2

evidence would be relevant in assessing his requested remedies of reimbursement for the evaluation report and for court-ordered changes to L.B.'s future IEPs. *Id.* at 2-3; *see also* ECF 31 at 27.

## II. LAW

Under the applicable provision of the IDEA, "the court . . . *shall* hear additional evidence at the request of a party." § 1415(i)(2)(C)(ii) (emphasis added). The Tenth Circuit, however, has clarified that a district court is actually not required to consider all such evidence. In *Miller v. Board of Education*, 565 F.3d 1232 (10th Cir. 2009), the court held that a district court's "*refusal* to consider additional evidence pursuant to the IDEA [is reviewed] for abuse of discretion." *Id.* at 1240-41 (emphasis added) (internal citations omitted). Specifically, if the excluded evidence was not "*relevant* to [an] *issue properly before the district court*," then the Tenth Circuit "cannot find the exclusion of [such] evidence to be an abuse of discretion." *Id.* at 1241, 1244-45 (emphasis in original) (internal citations omitted).

Regarding the acceptance of such evidence, district courts must "independently review the evidence contained in the administrative record [and] accept and review additional evidence, *if necessary.*" *Murray by & Through Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995) (emphasis added).[6] Furthermore, a district court's discretion to accept such evidence should not be used to exceed its "character of review"—but rather to merely "supplement the administrative record." *Miller*, 565 F.3d at 1241 (holding that a district court's "discretion to accept additional evidence is limited, however, because 'such evidence is merely supplemental to

---

[6] The Tenth Circuit has not explicitly held that a district court abuses its discretion unless it first establishes that such evidence is "relevant to [an] issue properly before the district court"—or "necessary"—before *accepting* and reviewing it. *See Miller*, 565 F.3d at 1241. In the context of reviewing *excluded* evidence, however, the Tenth Circuit has cited two other circuits that have essentially required the evidence to be relevant to an issue that was properly before the district court before the evidence was accepted for review. *Id.* (citing *Deal ex rel. Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir. 2004); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995)).

3

the administrative record' and federal court proceedings 'must maintain the character of review and not rise to the level of a *de novo* trial.'" (quoting *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004))); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982) (establishing that "due weight shall be given to these [administrative] proceedings").

### III. ANALYSIS

This Court concludes that the TS evaluation report is sufficiently "*relevant* to [an] *issue properly before [it]*." *Miller*, 565 F.3d at 1241. A central issue in the dispute before this Court is whether the school had reason to suspect a disability shortly after L.B. began the 2016-2017 school year and thus denied him a FAPE by not evaluating him for disability, including TS, that fall. *See* ECF 31 at 18-19. Plaintiff asserts that this new, post-hearing medical report shows that L.B. was later diagnosed with the additional disability of TS. *Id.* at 3, 18, 27. Plaintiff further asserts that the diagnosis of this particular disability is caused by symptoms "which have persisted for more than one year." *Id.* at 17-18 (citing AR 25-2, 5-6, 39; AR 25-4, 51, 54, 59; AR 25-6, 311-21). This report would thus provide at least *some evidence* that L.B. now has some form of TS and—by inference—that he either could have had TS, or at least TS symptoms, during the relevant time frame in the 2016-2017 school year. And evidence that L.B. indeed had such symptoms would tend to make a fact of consequence in this case—i.e., whether the school had reason to suspect that L.B. had a disability—more probable. *See* F.R.E. 401(a)-(b) (defining relevant evidence as having "*any* tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence" (emphasis added)). Therefore, the Court concludes that

4

the report is relevant to an issue properly before the Court and, as it is not cumulative, requires this Court's review.[7]

This Court also finds that the billing and payment information associated with this TS evaluation report is relevant to an issue that *could be*—but is not yet—properly before it. Assuming the Court rules in favor of Plaintiff, then this billing and payment information would indeed be relevant in determining, as an equitable remedy, whether and how much LCPS should reimburse Plaintiff. The issue that is currently before the Court, however, is whether LCPS denied L.B. a FAPE. Only if the Court holds that LCPS denied L.B. a FAPE can it then consider the issue of possible equitable remedies. Therefore, the Court finds that this billing and payment information is not *currently* relevant to an issue before the Court and thus does not require this Court's review.

Finally, the Court finds that the two post-hearing records created by LCPS, which purportedly show LCPS's subsequent "acceptance" of the TS evaluation report, are not relevant to an issue properly before the Court. *Miller*, 565 F.3d at 1241. Whether the school "accepted" this report sometime in 2018 is irrelevant as to whether—during the 2016-2017 school year—the school had reason to suspect that L.B. had a disability or whether the school denied L.B. a FAPE in some other way during that time frame. Furthermore, this Court concludes that such evidence is also irrelevant to an equitable remedy. Although Plaintiff asserts that such documents would provide the Court with evidence of how LCPS had *subsequently* failed to meet L.B.'s needs, *see* Pl.'s Reply 6, such evidence is irrelevant to whether—as a remedy for a FAPE denial during the 2016-2017 school year—the Court should order changes to L.B.'s IEP going forward. Consequently, the Court finds that these records are irrelevant to the issues currently before it.

---

[7] This Court is also mindful that such evidence should "merely supplement[] the administrative record," *Miller*, 565 F.3d at 1241, and that it should maintain its character of review by giving due weight to the administrative proceedings.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff's Motion should be **GRANTED IN PART AND DENIED IN PART**.

**IT IS THEREFORE ORDERED** that Plaintiff's request for this Court to admit the following evidence is **GRANTED**:

1. Evaluation report on L.B. by Dr. Joseph Jankovic, M.D., Baylor College of Medicine, Department of Neurology, evaluation performed 11/29/2017. [Pl.'s Mot. 2.]

Plaintiff shall submit such evidence **no later than April 29, 2019**.

**IT IS FURTHER ORDERED** that Plaintiff's request for this Court to admit the following evidence is **DENIED**:

2. billing/payment records for Baylor evaluation;
3. LCPS Multidisciplinary Evaluation Team documents for L.B., 3/8/2018[; and]
4. LCPS IEP for L.B. dated 3/8/2018. [*Id.*]

**IT IS FINALLY ORDERED** that Defendant's "Motion for Leave to File Surreply" [ECF 53] is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

                                                  THE HONORABLE GREGORY J. FOURATT
                                                  UNITED STATES MAGISTRATE JUDGE
                                                  *Presiding by Consent*