UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DOMINIC BOUTELLE, as parent of
L.B, a minor child,

    Plaintiff,

v.                                                             Civ. No. 17-1232 GJF/SMV

BOARD OF EDUCATION OF LAS
CRUCES PUBLIC SCHOOLS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon "Defendant's Motion for Partial Summary Judgment" [ECF 45] ("Motion"). The Motion is fully briefed. *See* ECFs 50 (Plaintiff's Response), 58 (Defendant's Reply). For the reasons articulated below, the Court will **GRANT** Defendant's Motion.

## I. BACKGROUND

In December 2017, Plaintiff filed suit in this Court against Defendant Board of Education of Las Cruces Public School ("LCPS"). Compl., ECF 1. Plaintiff's Complaint consists of two parts. First, it alleges that LCPS denied Plaintiff's son L.B. a free, appropriate public education ("FAPE"). *Id.* at 1, 4-10.[1] Second, it alleges that LCPS engaged in disability discrimination against L.B. *Id.* at 1, 10-12.[2]

---

[1] This claim was brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et. seq*.

[2] This claim was brought under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.

### A. Plaintiff's IDEA Claim

In November 2018, Plaintiff advanced his IDEA claim through his "IDEA Brief in Chief" ("IDEA Motion"), which presented this Court with evidence and supporting arguments for its review. *See* ECF 31. Consistent with Plaintiff's Complaint, this IDEA Motion also asked this Court to find that LCPS denied L.B. a FAPE and to thus reverse the hearing officer's decision and award an equitable remedy. ECF 31 at 11, 27; Compl. at 12 (requesting same forms of relief).[3] In May 2019—after reviewing the parties' briefing, approximately 2,600 pages of administrative records, and additional evidence that Plaintiff submitted—the Court held that LCPS did not deny L.B. a FAPE. ECF 62 (Memorandum Opinion and Order) at 1-2, 27.

In adjudicating this IDEA Motion, the Court made various factual findings and legal conclusions. *Id.* at 15-27. In relevant part, the Court found that LCPS had "no reason [during the timeframe alleged by Plaintiff] to suspect a disability"—and that LCPS thus "did not deny L.B. a FAPE by not pursuing a psychological evaluation [sooner]." *Id.* at 20. In addition, the Court concluded that "LCPS's formation of an [Individualized Education Program ("IEP") related to the conditions of emotional disturbance and ADHD] in early May 2017, as opposed to earlier in the school year, did not deny L.B. a FAPE." *Id.* at 5, 23.

The Court also addressed Plaintiff's argument that LCPS should not have placed L.B. on long-term suspension after a rock-throwing incident. *Id.* at 23-25. In doing so, the Court examined Plaintiff's assertion that L.B.'s rock throwing at other students might not have been intentional but rather merely a manifestation of a disability, specifically Tourette syndrome ("TS"). *Id.* at 23. After reviewing the evidence, the Court affirmed the previous administrative findings that L.B.'s

---

[3] The relevant timeframe considered by the hearing officer was from July 31, 2015, through July 31, 2017, the date Plaintiff filed his IDEA administrative complaint. ECF 25-5 at 27. The hearing officer found that "[a]lleged ongoing or alleged continuing claims occurring after . . . July 31, 2017, [were] not considered to have been raised or otherwise ripe." *Id.*

actions were "intentional"—and "not a manifestation of [L.B.'s] disabilities"—and it therefore concluded that the long-term suspension also did not deny L.B. a FAPE:

> After reviewing the record and giving "due weight" to the hearing officer's factual findings, this Court has no reason to disturb the finding that L.B. intentionally threw rocks at other students on April 19, 2017. L.B.'s conduct on that occasion—including striking a student with four rocks and then striking a separate student with a rock right after having asked something like "do you think I can hit him with a rock?"—certainly seems to suggest intentional conduct, rather than some sort of involuntary, complex motor tic, as suggested by Plaintiff. Thus—in also giving "due weight" to the administrative proceedings, the factual findings of which are considered *prima facie* correct—this Court concludes that the "Manifestation Determination" team correctly concluded that L.B.'s rock-throwing behavior on this occasion was "not a manifestation of his disabilities."
>
> Second, this Court also agrees with the hearing officer's factual findings that the reason for L.B.'s long-term suspension was this rock-throwing event . . . .
>
> Because L.B.'s rock-throwing behavior was intentional and not a manifestation of a disability, the school was permitted to apply the same "relevant disciplinary procedures" it would have applied to any other rock-throwing child without a disability. In addition, because the school still provided L.B. with an appropriate IEP that was in effect during the long-term suspension, it also met its substantive obligation under the IDEA. Therefore, LCPS did not deny L.B. a FAPE by placing him on long-term suspension.

*Id.* at 24-25 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982); *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1125 (10th Cir. 2008); 20 U.S.C. § 1415(k)(1)(C); Administrative Record ("AR") 25-6 at 96-99) (citing Pl.'s Mot. 25, ECF 31; AR 25-1 at 77; AR 25-5 at 447, 468-69; AR 25-6 at 160, 312) (footnotes omitted).

In light of its holding that LCPS did not deny L.B. a FAPE, the Court concluded its adjudication of Plaintiff's IDEA claim by affirming the hearing officer's decision and denying Plaintiff's IDEA Motion. *Id.* at 15-25, 27.

### B. Plaintiff's Disability Discrimination Claim

Plaintiff's disability discrimination claim was not formally advanced through his IDEA Motion and was therefore not explicitly adjudicated by this Court. *See* ECFs 1, 31, 62. This

discrimination claim alleges that, as of April 20, 2017, the day L.B. was suspended from school for rock throwing, LCPS had engaged in "past and ongoing discrimination on the basis of disability." Compl. 1, 10. Plaintiff alleges that such discrimination occurred because LCPS was "deliberately indifferent," "did not want to understand or accommodate" L.B.'s disability-related needs, and "lack[ed] professional knowledge" for supporting students with TS. *Id.* at 1, 10-12. This claim then asserts that, during L.B.'s long term-suspension, which included his attendance at the "CrossRoads program" for approximately half of his seventh-grade year, L.B. suffered "an inferior education and environment" and "shame and suffering." *Id.* at 11-12.

In his Response to Defendant's current Motion, Plaintiff clarifies that he is specifically alleging that "LCPS discriminated against L.B. on the basis of disability [1] through its lack of professional knowledge about TS and [2] by disciplining [L.B.] through long term suspension and removal from school." Resp. 9. Plaintiff also clarifies that—while he claims that certain "harm or consequences" of this discrimination "continued" during the long-term suspension and beyond—he is not alleging new or separate claims or "seeking an IDEA remedy." *Id.* at 9-12. Instead, Plaintiff states that "it is all the same claim"—which he summarizes as LCPS's failure to "apply professional knowledge about TS to the delivery of L.B.'s education and as a result fails to provide appropriate . . . delivery of education to him." *Id.* at 11. This failure, Plaintiff claims, caused L.B.'s long-term suspension and "continues to cause similar discriminatory discipline and deprivation of educational benefit." *Id.* at 10.

## II. ISSUE

LCPS now asks this Court to grant summary judgment in its favor on (1) Plaintiff's disability discrimination claim and (2) any claims that might have arisen after July 31, 2017, the date Plaintiff filed his IDEA administrative complaint. Mot. 1, 4-12; ECF 25-5 at 27. LCPS first

4

argues that because the Court has already upheld the hearing officer's decision—including his factual findings that directly contradict the factual assertions of Plaintiff's discrimination claim—LCPS is entitled to summary judgment on the disability discrimination claim. *Id.* at 6. Second, to the extent Plaintiff is asserting claims that have arisen after July 31, 2017, LCPS argues that any such claims would either not be ripe for review or still require Plaintiff to exhaust his administrative remedies. *Id.* at 12.

### III. APPLICABLE LAW

#### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 249 (1986)); *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U. S. 253, 289 (1968) (the question at summary judgment is whether a jury should "resolve the parties' differing versions of the truth at trial"). In evaluating such a motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion.'" *Scott v. Harris*, 550 U. S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U. S. 654, 655 (1962)).

#### B. Disability Discrimination

Section 504 of the Rehabilitation Act and Title II of the ADA "involve the same substantive standards" and are thus "analyze[d] . . . together." *Miller v. Bd. of Educ.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citing *Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 728

5

(10th Cir. 1996)). Specifically, courts "analyze [a plaintiff's] ADA claim by reference to section 504's standards." *Urban*, 89 F.3d 720 at 728. Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by any program that receives federal financial assistance. 29 U.S.C. § 794(a) (emphasis added).[4]

The Tenth Circuit has held that "complying with the IDEA is *sufficient* to disprove educational discrimination." *Miller*, 565 F.3d 1232 at 1246 (emphasis in original) (citing *Urban*, 89 F.3d at 728); *see also id.* (noting that the "provision of FAPE is [a] *per se* provision of education free from disability discrimination"); *Smith v. Robinson*, 468 U.S. 992, 1017 (1984) (noting that the "substantive requirements [of the IDEA and section 504] . . . have been interpreted to be strikingly similar"). Thus, "[w]hen the process mandated by the IDEA produces an administrative decision that is upheld on judicial review, 'principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws' such as the ADA and Section 504." *Miller ex rel. S.M. v. Bd. of Educ.*, 455 F. Supp. 2d 1286, 1312-13 (D.N.M. 2006) (quoting *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996)) (citing *Urban*, 89 F.3d at 727-28; *Pace v. Bogalusa City Sch. Dist.*, 403 F.3d 272, 290-97 (5th Cir. 2005) (en banc)), *aff'd*, 565 F.3d 1232 (10th Cir. 2009).

---

[4] *See also Miller*, 565 F.3d at 1246 (observing that "[a] prima facie case under [section] 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff" (internal quotation marks and citations omitted)); *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (holding that the ADA generally requires proof that (1) plaintiff "is a qualified individual with a disability," (2) who was "either excluded from participation in or denied the benefit of some public entity's services . . . or was otherwise discriminated against by the public entity," and (3) "such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability").

### C. Ripeness and Exhaustion

"In order for a claim to be justiciable under Article III, it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete form.'" *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)). Even if a claim would otherwise be ripe for determination, the IDEA nevertheless requires plaintiffs to "exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act [section 504], or similar laws" whenever such suits "seek relief for the denial of a FAPE." *Fry v. Napoleon Comm. Sch.*, 137 S. Ct. 743, 752 (2017) (citing 20 U.S.C. § 1415(l)). Such a requirement "is not merely a pleading hurdle" but rather "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 755.

In assessing "the substance, or gravamen, of the plaintiff's complaint," a court should consider that the IDEA "protects only 'children' . . . and concerns only their schooling"—while section 504 (and the ADA) "cover people with disabilities of all ages, and do so both inside and outside schools." *Id.* at 752, 755-56 (quoting 20 U.S.C. § 1412(a)(1)(A)); *see also id.* at 756 (stating that "[i]n short, the IDEA guarantees individually tailored educational services, while [section 504 and the ADA] promise non-discriminatory access to public institutions"). Thus, a court may ask whether "essentially the same claim" could only belong to "a child in the school setting (not an adult in that setting or a child in some other)." *Id.*[5]

---

[5] *See also id.* (performing such an analysis by asking (1) whether "plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library" and (2) whether "an *adult* at the school—say, an employee or visitor—[could] have pressed essentially the same grievance" (emphasis in original)). For example, the "essence" of a claim regarding a lack of wheelchair access ramps to a public school is "equality of access to public facilities, not adequacy of special education [i.e. the provision of a FAPE]." *Id.* And such a claim could be brought by an "adult in that setting or a child in some other." *Id.* In contrast, however, the "essence" of a claim regarding inadequate remedial tutoring in mathematics at a public school is "the provision of a FAPE." *Id.* at 756-57. And such a claim would only belong to a "child in the school setting." *Id.* at 756.

## IV. ANALYSIS

### A. The Portion of Plaintiff's Disability Discrimination Claim Relating to the Time Period on or before July 31, 2017, Is Precluded.

Plaintiff's disability discrimination claim asserts that LCPS's "lack of professional knowledge about TS" caused L.B. to be denied an appropriate "delivery of education"—particularly by being disciplined "through long term suspension." Resp. 9, 11; Compl. 10-12.[6] And as a claim under section 504 (and the ADA), it asserts that LB. was "solely by reason of . . . his disability" denied such an appropriate education. 29 U.S.C. § 794(a).[7] This claim, however, is directly contradicted by facts already adjudicated by this Court.

As mentioned, this Court—in fully adjudicating Plaintiff's IDEA claim—has already held that "LCPS did *not* deny L.B. a free, appropriate public education." ECF 62 at 27 (emphasis added). In reaching this holding, the Court explicitly found that L.B. was suspended long-term because he "intentionally" threw rocks at other students—not due to a "manifestation of his disabilities"—and that LCPS "was [thus] permitted to apply the same 'relevant disciplinary procedures' it would have applied to any other rock-throwing child without a disability." *Id.* at 24-25 (quoting 20 U.S.C. § 1415(k)(1)(C)). Therefore, in light of this Court's findings that L.B. was not suspended long-term because of his disability or otherwise denied a FAPE, Plaintiff cannot

---

[6] Plaintiff also asserts, as addressed in more detail in Section IV(B), that this lack of knowledge "*continues* to cause similar discriminatory discipline and deprivation of educational benefit." *Id.* at 10 (emphasis added).

[7] In addition, under this statute, L.B. must also be an "otherwise qualified individual with a disability." *Id.* LCPS asserts, however, that Plaintiff failed to "set forth any facts that, even if true, would support a finding that L.B.'s diagnosis of TS satisfies the definition of a disability under the ADA," given that "Plaintiff does not state how" L.B.'s "knuckle cracking, tearing paper, touching objects or himself, and foot tapping . . . . [or] reported grunts, throat-clearing, and cursing while playing video games" meet the ADA requirement of "substantially limit[ing] L.B. in any major life activity." Reply 2-3 (citing 42 U.S.C. §12102(1); *Ellenberg v. N.M. Mil. Institute*, 572 F.3d 815, 824 (10th Cir. 2009); Resp. at Ex. 1, 10). The Court, however, need not address this issue because—even if L.B.'s conditions satisfied the required definition of a disability—this Court has already established that L.B. was not suspended long-term because of his disability or otherwise denied an appropriate education, *see* ECF 62 at 15-27, and such an adjudication of IDEA compliance is "*sufficient* to disprove educational discrimination." *Miller*, 565 F.3d 1232 at 1246.

8

successfully claim that essentially the opposite occurred—i.e., that L.B. was in fact suspended long-term "solely by reason of . . . his disability" and otherwise denied an appropriate education.

Given the preclusive effect of this Court's adjudication of Plaintiff's IDEA claim on the instant disability discrimination claim, *see Miller ex rel. S.M*, 455 F. Supp. 2d at 1313, there can be no genuine dispute as to any material fact regarding this claim because the "provision of FAPE is [a] *per se* provision of education free from disability discrimination." *Miller*, 565 F.3d 1232 at 1246. Consequently, regarding the portion of Plaintiff's disability discrimination claim relating to the period on or before July 31, 2017—i.e., the timeframe considered by the hearing officer and then this Court in its adjudication of Plaintiff's IDEA claim—the Court holds that Defendant is entitled to judgment as a matter of law.

### B. The Portion of Plaintiff's Disability Discrimination Claim that Extends Beyond July 31, 2017, Is Not Exhausted.

Plaintiff's Complaint also asserts that there is "*ongoing* discrimination on the basis of disability"—i.e., that LCPS's disability discrimination against L.B. continues beyond July 31, 2017. Compl. 1 (emphasis added). Plaintiff, however, does not state in his Complaint or his Response what LCPS is specifically still doing (or failing to do) that discriminates against L.B. by reason of his disability. *See id.* at 10-13; Resp. at 9-12. Instead, Plaintiff merely asserts that LCPS continues to fail to "apply professional knowledge about TS to the delivery of L.B.'s education." *Id.* at 11. As a result, Plaintiff claims that L.B. continues to suffer "discriminatory discipline" and to be deprived of an "appropriate . . . delivery of education" or "educational benefit." *Id.* at 10-11.

Although this claim of ongoing discrimination gives the Court pause,[8] this Court holds that, even if it is an otherwise valid claim, it has nevertheless not yet been exhausted. As mentioned, the IDEA requires Plaintiff to first exhaust its procedures—including when seeking a claim under section 504 (or the ADA)—whenever such a claim "seek[s] relief for the denial of a FAPE." *Fry*, 137 S. Ct. at 752. And this Court finds that this claim seeks such relief because it is founded upon the denial of "individually tailored educational services" to L.B., "a child in the [public middle] school setting." *Id.* at 747, 756. Such a claim could not, for example, otherwise belong to "an adult in that [public middle school] setting or [L.B.] in some other." *Id.* at 756. Consequently, "its essence—even though not its wording—is the provision of a FAPE." *Id.* at 757.

In conclusion, Plaintiff's claim of ongoing disability discrimination seeks relief for the denial of a FAPE, but that claim has not satisfied IDEA's exhaustion requirement. There being no genuine issue that Plaintiff has not exhausted the portion of his claim that alleges disability discrimination extending beyond July 31, 2017, the Court holds that Defendant is also entitled to judgment as a matter of law as to that portion of the complaint.

## V. CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion. Furthermore, as the Court has already adjudicated Plaintiff's IDEA claim, and as there are no remaining claims before the Court in this matter, the Court will DISMISS this case WITH PREJUDICE.

**IT IS THEREFORE ORDERED** that Defendant's Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE**.

---

[8] For example, this Court is not convinced that such a claim presents a controversy in sufficiently "clean-cut and concrete form," *Renne*, 501 U.S. at 322, or that it is not overly "conclusory." *See High Desert Relief, Inc. v. U.S.*, 917 F.3d 1170, 1181 (10th Cir. 2019) (stating that "conclusory statements . . . do not suffice to create a genuine issue of material fact" (internal quotations and citations omitted)).

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*